Day, J.
The plaintiff here, and in the lower court, prosecutes error to procure the reversal of a judgment rendered against it, in an action to recover a damage claimed to have resulted from a failure of defendant to perform his contract to remove and rebuild plaintiff’s school-house, situate in one of the sub-districts of Bath township, Allen county.
The facts of the case are agreed upon by the parties, and are: The said board of education,and defendant'Townsend, made an agreement in writing, on November 7, 1895, in which the said board agreed to make a proper conveyance of a strip of land, ninety feet wide, owned, occupied and used by it for school purposes and particularly described, on which was a school-house, to the Lima Northern Railway Company, on and over which to construct and|build its railroad. In consideration of suctTconveyance|for the use of the railway company, Townsend agreed to procure another school-house site near by, for the saidjboard, and to remove and re-build the said school-house on such.new site, and put it in such condition that it^would^be fit| forjjuse for school purposes; also to remove certain out-buildings, and do and perform other things, all of which was to be done *676 and finished within sixty days from said November 7. The strip of land was at once conveyed to the railway company, and a railroad track was constructed upon and across it. Townsend procured the new site, had title thereto vested in the board of education, and done and performed all the other stipulations of his contract, to the satisfaction of the said board, except the removal and re-building of the school-house on the new site; and that condition of his contract he entirely omitted and failed to perform. On November 28, 1895, twenty-one days after the agreement to remove and re-build was made, the said school-house was, by a violent wind storm, blown down 'and completely destroyed, so that, as a school house, it could not be removed. Subsequently, and in the fall 1896, the boaird, after requesting Townsend to build a school-house and bis failure to do so, built a school-house on the new site, at an expense $1,319 — differing from the destroyed house in the particular of a cupalo, which cost $50.- — The old schoolhouse was so badly wrecked that it could not be removed and re-built; and a new one of the same size constructed of similar new material would cost $1,000. Prior to the wind storm, and until its occurrence, Townsend made diligent and reasonable endeavor to procure the removal of the house, but made no such effort after its destruction. The house was continuously occupied and used by the board, for purposes of the school,and was so occupied and used up to, and including the day before its destruction.
The plaintiff’s contention is, that notwithstanding the total destruction of the house by the wind storm, defendant is not excused from the performance of the contract, but is liable to respond, and must respond in. damages, because of non-performance. While the defendant asserts the claim, that the subject matter of the contract, the old school-house, was destroyed by act of God, without any fault of his, so that the contract with respect to the removal and rebuild *677 ing of the house, became impossible of performance, and in law and good conscience, he is excused and released from the obligations of it, in that regard.^
The question presented is an interesting one, and rather unusual, from the fact that it rarely arises. The precise question we have here has not frequently, if at all, engaged the attention of the courts of the state. If our court of last resort or any reviewing court of the state, has, at any time entertained and considered the proposition, or made any ruling with reference to it, the fact has not been brought to our notice, and it would seem that, so far as any reported adjudication by our courts is concerned, the proposition is a new and undecided one. The courts of last resort of other states and countries, however, have dealt with the matter, and reported cases there are in plenty, blazing the way and evolving a reasonable rule by which the rights of parties may be correctly measured.
It is a general rule that inevitable accident, or unavoidable casualty, making strict performance of an agreement impossible, does not absolve a man from his contracts. In general they must be performed or their non-performance compensated. There is an exception to this rule, as well established as the rule itself, that in contracts in which performance depends upon the continued existence of a certain person or thing,a condition is implied that the impossibility of performance, arising from the perishing of the person or thing, shall excuse the performance. The implication arises, notwithstanding the unqualified character of the promissory words of the contract, because, from the nature of the contract, it is apparent that the parties contracted upon the basis of the continued existence of the particular person or thing. To this effect is the purport of nearly all the decided cases. Mr. Beach, in the first volume of his work on the Modern Law of Contracts, sec. 217, clearly *678 and concisely statesjthe rules of law obtaining in such controversies, as follows:
“The general doctrine that, when a party voluntarily undertakes to do a thing without qualification, performance is not excused because by inevitable accident or other contingency not foreseen, it becomes impossible for him to do the act or thing which he agreed to do, is well settled, But it is equally well settled th»t when performance depends on the continued existence of a given person or thing,and such continued existence -was assumed as a basis of the agreement, the death of the person or the destruction of the thing puts an end to the obligation. ”
It will be observed that the contractor is not excused from performance of his contract, as a matter of course, whenever performane]becomes impossible through the act of God, or inevitable casualty, but only m contracts in which such inevitable accident is expressly provided against",or the continued existence of the subject matter of the contract is assumed, by both the contracting parties, as a basis of the agreement; and the class to which a given contract belongs is to be ascertained and”determined, only, from an examination and consideration of the terms and stipulations of the particular contract.
Among the:|unforeseen happenings, effective to excuse the performance of a contract, are included extraordinary 'floods, storms of unusual violence, sudden tempest, sudden death and the like. They are said to be unavoidable, inevitable casualty, or act of God, and in proper circumstances, excuse non-performance of a contract. That is to say, the acts of the Almighty are not within the contract, and were not considered. The parties did not assume to direct or guard against the unknown and unknowable acts of God, but made their contract with reference to present existing conditions, mutually relying on a beneficient Providence, and hoping~for a continuance of the favorable conditions; and if the favor is withdrawn, it is the act of Providence, may be a calamity, to be 'deplored of course, but for which *679 ■neither is to blame or to be held responsible. The periormance of the contract, in such case, becomes impossible •without the fault of either party, and is excused.
Does the case at bar fall within the general rule, or within' the exception so plainly stated? This, as has been stated, =must and does depend upon the nature of the contract in question. The precise wording of the contract with respect to •the removal and re-building of the school-house, is as follows:
“Said James B. Townsend further agrees within said time (60 days), to remove the present school-house, located ■on the south-east corner of sec. IB, * * * to the above described premises (the new site) and re-build and re-con.-struct the said building so that it will be in suitable and proper condition for school purposes, * * ”
From a careful reading of this provision of the contract, it is quite apparent that both parties assumed and relied on the continued existence of the school-hoisse,and neither one contemplated, much less provided against its destruction, or stipulated for or against liability to make compensation as ■damage, in the event of its ceasing, from any cause, to exist. The contract is for the removal and re-building of a ■particular school building — -the one situate on the southeast corner of sec. 18. No other ^building was then in contemplation or consideration. They could as well have provided for the removal and reconstruction of some other building —of a building — or the construction of a new one, if such was their agreement. But not so. Reasonably construing the contract, both assumed and presumed the school building, desired and necessary to be removed, would continue ■to stand and exist as a school-house, and they-made their contract for its removal and re-building, so it would be in proper condition for school purposes; and, under the rule stated, this manifestly belongs to the group or class of contracts which form an exception to.the general rule,in that, the continued existence of the school-house as a distinct *680 entity was assumed, by both parties,as a basis of the agreement, and its destruction having been wrought by inevitable accident or act of God, for which neither one is to blame, the performance of its stipulations is impossible, and is excused.
Cable & Parmenter, for Plaintiff.
W. B. Richie, and W. H. Leete, for Defendant.
We perceive no error in the record, and the judgment is. affirmed, with costs.